INHABITANTS OF EASTPORT *vs.* INHABITANTS OF LUBEC.

*Pauper supplies—what are.*

Needed supplies furnished by the town to a minor child, not emancipated nor abandoned, when furnished with the knowledge of the father, and by reason of his failure to furnish necessary support to the child, will be deemed supplies furnished indirectly to the father, and will interrupt the gaining of a settlement by him. His consent to the furnishing is not necessary.

It is competent for a jury to infer such knowledge on the part of the father in a case where the supplies are furnished to his daughter by the authorities of the town where he lives, she having left his house by reason of a quarrel with her step-mother and gone to an uncle's in the same town, and there fallen into distress.

ON MOTIONS FOR A NEW TRIAL.

ASSUMPSIT, to recover for supplies furnished under the pauper act to George and Martha, minor children of Reuben Lyons, whose legal settlement was the only question for the jury, the defendants denying that it was in their town and claiming it to be in Pembroke. Reuben Lyons was born in 1817 in Lubec, where his father and grandfather resided before him. November 27, 1837, Reuben Lyons was married to Martha Leighton who died in December, 1852, having borne him seven children of whom the

oldest was named Frances.   Within a year after his said marriage he moved from Lubec to Pembroke, where he remained but a few months, and then moved from one place to another, returning occasionally to reside in Pembroke, Lubec, and neighboring towns. Upon the twenty-fourth day of April, 1853, he was again married, at Lubec, where he was then living, to Martha A. Case.   In the July following they moved to Eastport, where they staid till the next October, when they went to Pembroke.   From this time, October 18, 1853, till some time in the last of August, 1859, the defendants claimed, and Mr. Lyons testified, (upon their motion for a new trial on account of newly discovered evidence,) that his residence was in Pembroke, though it was admitted that he was actually living with his family in Perry, a few rods from the line dividing those towns, from April to September of the year 1854, during which season he worked in Pembroke, and built himself a house upon the land there for which he had bargained, and moved into this house in September, 1854.   His second wife bore him six children, of whom the youngest two were Martha and George, to whom the supplies were furnished for which a recovery was sought in this action.   Late in the fall of 1854, after his second marriage, his oldest child, Frances, then fourteen years of age, left the house (in Pembroke) and went to her maternal grandfather's, George Leighton, in Pembroke, where she resided most of the time after that, except that she was for some weeks at her uncle's, Robinson Leighton's, in Pembroke.   The plaintiffs sought to defeat the alleged settlement of Reuben Lyons in Pembroke, by claiming that the removal to Perry was an interruption of his residence, and was of like character with his other removals; and also by testimony that while his daughter was at her grandfather's she was sick, and again while at her uncle's, and that, on each occasion, she was upon the application of those relatives, supplied by the town of Pembroke with medical services and necessaries, the bill for which was subsequently paid by Lubec.   It was also asserted that the whole family was twice aided in the absence of Mr. Lyons.   There was much conflict upon the fact of assistance

being rendered, which was recognized and paid for by Lubec; and it became an important issue whether or not Frances was helped as stated. The jury gave their verdict in favor of the plaintiffs and the defendants moved to set it aside as against the law and the weight of evidence; and subsequently filed another motion for a new trial upon the ground of newly discovered evidence, consisting mainly of the denial by the gentleman who was said, while an overseer of Lubec, to have paid for the aid afforded Frances by Pembroke, and of Frances' deposition that she never asked for nor received such aid, and of her father that it was not rendered with his knowledge or consent. Upon cross-examination these witnesses all admitted that an overseer from each of these towns did visit Frances while sick at her grandfather's and uncle's, and that they did tell Reuben that application for relief had been made; to which he replied that he would take care of her if she would stay at home, but that he could not afford to board her out. And he made no attempt to take her home.

*J. C. Talbot* and *A. McNichol* for the defendants.

*Joseph Granger* and *W. Bates* for the plaintiffs.

BARROWS, J.  It is doubtless true that the furnishing of supplies to a minor child (who is not a member of her father's family, but is away from his care and protection either through her own fault or his neglect, without the knowledge or consent of the father,) by a distant town where she may happen to fall into distress, he being of sufficient ability and willing to support her at his own home, would not be considered a furnishing of supplies to him as a pauper, so as to prevent his acquiring a settlement to which he would otherwise be entitled.  This was settled in *Bangor* v. *Readfield*, 32 Maine, 60; *Greene* v. *Buckfield*, 3 Maine, 136; *Dixmont* v. *Biddeford*, 3 Maine, 205.

Again it seems to have been held in cases where the father has deliberately abandoned his family and taken up his residence in another town, emancipating them from all duty to him, and

renouncing all obligation to them, that supplies furnished, even under such circumstances as imply a knowledge of the fact upon his part, will not be considered as supplies furnished to him, so as to prevent his gaining a settlement in his new place of residence. *Raymond* v. *Harrison*, 11 Maine, 190; *Hallowell* v. *Saco*, 5 Maine, 143.

But when the parental and filial relation continues to subsist, and there has been no emancipation or abandonment, and the circumstances are such as make it evident that the father has knowledge of the necessities of the child, and he fails to supply those necessities, and they are supplied by the town officers, acting in good faith to relieve a case of actual want and distress, the supplies thus furnished will be deemed supplies furnished indirectly to the father, and will operate to prevent his gaining a settlement.

This is abundantly established in the cases of *Garland* v. *Dover*, 19 Maine, 441; *Sanford* v. *Lebanon*, 31 Maine, 124; *Clinton* v. *York*, 26 Maine, 167.

In *Garland* v. *Dover* it was settled that minor children might be still under the care and protection of the father, so that supplies to them would interrupt the gaining of a settlement by him, though they were not in his family at the time, and in each of the cases above cited the question what will constitute an abandonment or an emancipation is more or less discussed.

In *Clinton* v. *York* the relations subsisting between the father and daughter greatly resembled in essential particulars those in the case at bar. The court to whom the case was reported for decision upon the law and fact appear to have held that such a condition of things showed neither emancipation nor abandonment, and to have inferred the father's knowledge of the furnishing of supplies by the town from the fact that the daughter was living in the same town with him.

It is well settled that if the necessity for supplies exist, it is not essential to show that the recipient called for them, or that the party whose settlement is thereby affected should have assented to the furnishing of them by the town. If the supplies were actu-

ally needed and were furnished, received and consumed, it suf-
fices.   *Corinna* v. *Exeter*, 13 Maine, 328; *Hampden* v. *Levant*,
59 Maine, 560.   The anger, indifference or false pride of a father
cannot be permitted to prevent the supply by the town authorities
of such aid as the pressing necessities of any member of his family,
or of any child not emancipated who is under his care, may re-
quire.   If he knows of the existing need, and fails to furnish it
himself, so long as the parental and filial relations are not dis-
solved, the furnishing and reception of aid from the town must
have its legitimate effect upon his settlement.   *Corinna* v. *Exeter*,
*ubi supra*; *Tremont* v. *Mount Desert*, 36 Maine, 390.

Such a case belongs to a totally different class from *Bangor* v.
*Readfield*, where the child had left her father's home without his
knowledge or consent, and the supplies were furnished by a distant
town, there being no evidence of any knowledge on his part that
she had fallen into distress.

There was evidence at the trial from which the jury might well
find that, late in the fall of 1854, while Reuben Lyons lived in
Pembroke, his daughter Fanny, then aged 15, left home on ac-
count of a quarrel with her step-mother, and went to her uncle
Robinson Leighton's in the same town; that while there, the at-
tention of the overseers of the poor was called to her as a person
needing relief; that she actually was in such need; that the over-
seers agreed with and paid Robinson Leighton for her board; that
they notified the defendant town, and that James Leighton, one
of the overseers of Lubec, came to attend to the case; that a con-
ference with Reuben Lyons, the father, failed to secure his inter-
vention in the matter.   It is hardly supposable that Reuben Lyons,
living in the same town, could have been ignorant of this condi-
tion of things before this conference with the overseers of the two
towns.   There is nothing to show abandonment or emancipation
up to that time.   The supplies must be considered as having been
indirectly furnished to him.

The statements made by Reuben Lyons and James Leighton
upon cross-examination in their depositions taken by the defend-

Calais *v.* Whidden.

ants in support of the motion for a new trial on the ground of newly discovered evidence, tend rather to corroborate the testimony of Adna Leighton upon these points.

*Motions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and LIBBEY, JJ., concurred.