INHABITANTS OF LIBERTY *vs.* INHABITANTS OF PALERMO.

Waldo.    Opinion July 1, 1887.

*Pauper. Settlement. Minor. Emancipation.*

Pauper supplies furnished to a minor child will not be considered as supplies indirectly furnished the father when there is a destruction of the parental and filial relations, and the father has deliberately abandoned such child, and has taken up his residence in another town, emancipating the child from all duty to him, and renouncing all obligation to it.

Supplies furnished under such circumstances, even with the knowledge of the father, will not be considered as supplies furnished to him so as to prevent his gaining a settlement in his new place of residence.

ON report.

The opinion states the case and material facts.

*W. P. Thompson and R. F. Dunton*, for plaintiffs.

Emancipation is never to be presumed but must always be proved. *Lowell* v. *Newport*, 66 Maine, 78 ; *Oldtown* v. *Falmouth*, 40 Maine, 106.

The court in *Sanford* v. *Lebanon*, 31 Maine, 124, say, "The test to be applied is that of the preservation or destruction of the parental and filial relations."

In *Monroe* v. *Jackson*, 55 Maine, 59, the court say in speaking of a similar case : "Poverty even culminating in absolute pauperism of the parent and resulting in a binding out to service of the child by the selectmen until he is twenty-one years of age, does not affect it."

In *Clinton* v. *York*, 26 Maine, 167, the settlement of John Beal was the question, and where supplies furnished his daughter

while living apart from his family were claimed to have prevented the father from gaining a settlement, and it appeared that the daughter had lived round in a good many places since her childhood, and that her father would not have her in his house, the court held that the daughter was not thereby emancipated.

The court in *Lowell* v. *Newport*, 66 Maine, 90, in reviewing the reported cases upon the question of emancipation, say, "From these cases as well as others in harmony with them, the principle to be deduced is that emancipation such as will effect a settlement under the pauper laws, however it may be in other cases, must be an absolute and entire surrender on the part of the parent, of all right to care and custody of the child, as well as to its earnings, with a renunciation of all duties arising from such a position.

*William H. Fogler*, for the defendants, cited : *Lowell* v. *Newport*, 66 Maine, 90 ; *Green* v. *Buckfield*, 3 Maine, 136 ; *Hallowell* v. *Saco*, 5 Maine, 143 ; *Raymond* v. *Harrison*, 11 Maine, 190 ; *Manchester* v. *West Gardiner*, 53 Maine, 525 ; *Garland* v. *Dover*, 19 Maine, 441 ; *Sanford* v. *Lebanon*, 31 Maine, 124 ; *Hampden* v. *Troy*, 70 Maine, 485.

FOSTER, J. This action is brought to recover for supplies furnished Harris Bailey and family, paupers residing in the plaintiff town.

It is agreed that Bailey formerly had a settlement in the defendant town, and that before the supplies for which this action is brought had been furnished he had acquired a legal settlement in the plaintiff town by having his home therein for five successive years, unless prevented by the fact that supplies had been furnished by the defendant town to Evilla May Bailey, a minor daughter by a former wife from whom he was divorced in 1869.

It was admitted that this daughter has received pauper supplies from the defendant town every year since her birth, which was in April, 1867, to within four years last past ; and the plaintiffs claim that said supplies were indirectly furnished to Harris

Bailey, and thus prevented him from gaining a settlement in the plaintiff town.

The defendants, while admitting the support to have been thus furnished to the daughter, contend that it had no effect upon the father's settlement, because as they claim, the child was during all said time totally abandoned and emancipated by the father.

This is the only controverted question in the case—the only one we need consider, and the one decisive of the rights of the parties.

The evidence satisfies us that the child was emancipated by abandonment.

At the time the child was born Bailey and his wife were living apart from each other, having separated two months before. He first saw the child when she was six weeks old, his wife carrying her to him where he was at work in an adjoining town. He then refused to take the child; utterly refused to furnish anything for her, and denied that she belonged to him. He repeatedly thereafter declared that the child was not his, and that he should not support her, or have anything to do with her. The next time he saw the child was about a year after that when she was again carried to him, and he then refused to take any notice of her, still denying her paternity, and swearing that he would never support her. With one possible exception, and about which the evidence is conflicting, the father did not again see the girl for a period of about ten years, when he happened to meet her at a neighbor's house, but did not know who she was. When informed he manifested no interest whatever in her, and according to his testimony, does not recollect that he even spoke to her. The child was then eleven years old, and his home had been in the plaintiff town for more than six years.

In 1880, the girl, then being thirteen years of age, by invitation went to his house and remained four days. From that time to the present the father has had nothing to do with her, and it does not appear that he has even seen her. While there is some evidence that at one time he bought the child two yards of print, his own testimony is, "I never helped her any that I know of;" and he does not recollect of ever furnishing the child

anything in her life except just what food she ate while she was at his house.

The father was a man of sound health, able bodied, and received good wages. Divorced from the mother of this child in 1869, when it was two years of age, he again married in 1871, and has reared and supported a family of four children, having received assistance but once, and that only to the amount of five dollars in the town of Somerville, previous to the bill for which this suit is instituted.

The separation of the child from the father was not occasioned through poverty, nor in other respects did the parental and filial relation continue, as in *Garland* v. *Dover*, 19 Maine, 446; *Clinton* v. *York*, 26 Maine, 170; *Sanford* v. *Lebanon*, 31 Maine, 124; or *Eastport* v. *Lubec*, 64 Maine 244, cited by the plaintiffs. Here, from the testimony of the father it appears that he could have supported this child if he had wanted to, but he "didn't want to."

In the cases to which we have referred it will be found that the mere fact that the child was not residing in the family of the parent was not satisfactory proof of abandonment or emancipation. And the more satisfactory criterion of whether or not there had been such abandonment or emancipation, was found to be that of "the preservation or destruction of the parental and filial relations."

It is in accordance with this principle that the decisions of our court have uniformly held, in cases where the parental and filial relation no longer continues to subsist, and the father has "deliberately abandoned his family and taken up his residence in another town, emancipating them from all duty to him, and renouncing all obligation to them, that supplies furnished, even under such circumstances as imply a knowledge of the fact upon his part, will not be considered as supplies furnished to him, so as to prevent his gaining a settlement in his new place of residence." *Eastport* v. *Lubec*, 64 Maine, 246; *Raymond* v. *Harrison*, 11 Maine, 190; *Hallowell* v. *Saco*, 5 Maine, 143; *Lowell* v. *Newport*, 66 Maine, 87.

During the entire lifetime of this child, now more than twenty

years of age, the father has bestowed upon her no parental care. Neither has he exercised or attempted to exercise over her any parental control, and has required of her no filial obedience or duty. In no sense can it be said that she has been under her father's care and protection. There was such a voluntary and absolute renunciation of all duties arising from the parental and filial relation that, according to the established tests in such cases, emancipation would inevitably result.

In *Munroe* v. *Jackson*, 55 Maine, 59, it is said by BARROWS, J. that it occurs not only by the act of God in depriving the child of his natural protector by death, but also "by the voluntary act of the parent in surrendering the rights and renouncing the duties of his position, or in some way conducting in relation thereto, in a manner which is inconsistent with any further performance of them."

And in *Lowell* v. *Newport*, 66 Maine, 90, after an examination of many decided cases wherein the question of emancipation has arisen, the court say : "Indeed, the best test which can be applied is the separation and resulting freedom from parental and filial ties and duties, which the law ordinarily bestows at the age of majority. "

What more potent evidence of deliberate abandonment, of freedom from parental and filial ties, and the renunciation of all parental obligation and duty is required than appears in this case ? It is sufficient, we think, to establish a defence to this suit.

*Judgment for defendants.*

WALTON, DANFORTH, LIBBEY, EMERY and HASKELL, JJ., concurred.